UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BOLD LIMITED, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>ROCKET RESUME, INC., et al.,<br><br>　　　　　Defendants. | Case No. 22-cv-01045-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>[Re: ECF Nos. 60, 64] |

This case was brought by Plaintiffs Bold Limited and Bold LLC (collectively, "Bold") against Defendants Rocket Resume, Inc. ("Rocket Resume") and Stephen Zimmerman for copyright infringement, unfair competition, and breach of contract.

Defendants filed a motion to dismiss the First Amended Complaint. ECF No. 60 ("MTD"); *see also* ECF No. 63 ("MTD Reply"). Plaintiffs oppose the motion. ECF No. 62 ("MTD Opp."). The Court held a hearing on the motion on May 11, 2023. *See* ECF No. 70. Defendants also filed a motion to compel arbitration. ECF No. 64 ("MTC"); *see also* ECF No. 66 ("MTC Reply). Plaintiffs oppose in part the motion. ECF No. 65 ("MTC Opp."). The Court held a hearing on the motion on June 15, 2023. ECF No. 73. For the reasons explained below, the Court DENIES IN PART and GRANTS IN PART WITH LEAVE TO AMEND the motion to dismiss and GRANTS IN PART and DENIES IN PART the motion to compel arbitration and stay action.

**I.　BACKGROUND**

As alleged in the Complaint, Defendant Rocket Resume is a corporation and Stephen Zimmerman is the CEO and founder. ECF No. 51 ("FAC") ¶¶ 8-9.

Bold designed, authored, owns, and operates "MyPerfectResume" ("MPR Website"), a website available at www.myperfectresume.com. FAC ¶¶ 11-12. The MPR Website is an interactive website that, among other things, helps users create resumes and cover letters. *Id.* When creating a resume on the MPR Website, users can select a job title, and they will then be presented with a filtered list of suggested job descriptions. *Id.* ¶ 16. Bold organizes these original job descriptions in a database called its Text Tuner Content ("TTC"). *Id.* ¶ 17. Bold registered the 2018 version of the TTC with the U.S. Copyright Office (TX0008919525), and it has registered annual updates to the TTC for 2019 (TX0008919529) and 2020 (TX0008919521). *Id.* ¶ 17. Bold also obtained U.S. Copyright Registration TX0008436147 for the MPR Website. *Id.* ¶ 18.

Individuals who want to use the MPR Website can sign up for an account at http://www.MyPerfectResume.com. FAC ¶ 14. To access and use the MPR Website, users must agree to the Terms of Use located at http://www.MyPerfectResume.com/terms-conditions ("MPR Terms of Use"). *Id.* ¶ 15, Exs. A (MPR Terms of Use lasted updated December 1, 2019), B (MPR Terms of Use last updated October 12, 2022). Under the MPR Terms of Use, users agree not to use any automated software or devices or any data mining techniques to collect content within the MPR website. *Id.* ¶ 15. The users also agree not to share the content with any other individual or entity unless reasonably necessary for its intended purpose. *Id.*

In early 2020, Bold discovered a website at www.rocket-resume.com ("Rocket Resume Website") that was allegedly nearly identical to the MPR Website. FAC ¶ 24. As alleged by Plaintiffs, the Rocket Resume Website incorporated a substantial number of the original job descriptions from the MPR Website. *Id.* ¶ 26. On May 19, 2021, Bold sent a letter to Zimmerman that identified the evidence of copying and demanded that Defendants discontinue all copying and use of information from the MPR Website. *Id.* ¶ 27. On June 4, 2021, counsel for Rocket Resume responded, stating that the examples of copied material that had been sent in Bold's letter were no longer on the Rocket Resume Website. *Id.* ¶ 28. In a letter to Rocket Resume's outside counsel dated November 16, 2021, Bold's outside counsel stated that although Rocket Resume had removed certain content identified in the May 2021 letter, the Rocket Resume Website still included evidence that text from the MPR Website had been copied and reproduced. *Id.* ¶ 29.

1   Bold discovered other instances of copied job descriptions, including descriptions for made-up
2   jobs that Bold had originally included in its TTC for purposes of proof in the event that its TTC
3   database was copied.  *Id.* ¶ 30.  Bold alleges that the fact that so many of the MPR Website job
4   descriptions, including the made-up descriptions, were the same on the Rocket Resume Website
5   shows that Defendants used automated means to steal information from the MPR Website.  *Id.* ¶
6   31.  Bold's outside counsel sent another letter dated December 17, 2021 demanding that Rocket
7   Resume immediately and permanently cease and desist, but Defendants failed to stop their
8   activity.  *Id.* ¶ 32.  Plaintiffs thus filed the instant action.  *Id.*

9   Plaintiffs assert three causes of action: (1) copyright infringement in violation of 17 U.S.C.
10  § 101 *et seq.*; (2) unfair competition in violation of the California Unfair Competition Law
11  ("UCL"), Cal. Bus. & Prof. Code § 17200; and (3) breach of contract.  FAC ¶¶ 33-58.

12  Defendants moved to dismiss the FAC.  *See* MTD.  In the alternative, Defendants moved
13  to compel arbitration.  *See* MTC.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  But the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the

3

1  reasonable inference that the defendant is liable for the misconduct alleged." *Id*. On a motion to
2  dismiss, the Court's review is limited to the face of the complaint and matters judicially
3  noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v.*
4  *Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### B. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") applies to arbitration agreements affecting interstate commerce and governs the enforceability and scope of an arbitration clause. *See* 9 U.S.C. §§ 1-402. The FAA embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (internal quotations and citations omitted). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Benson v. Casa de Capri Enters., LLC*, 980 F.3d 1328, 1330 (9th Cir. 2020) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). A moving party need only prove by a preponderance of the evidence that an agreement to arbitrate the claims exists. *See Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010). "[T]he party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012).

Section 2 of the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

### III. MOTION TO DISMISS

In the motion to dismiss, Defendants argue that the breach of contract and UCL claims

should be dismissed. *See* MTD; MTD Reply. As to the breach of contract claim, Defendants argue that there is no contract and that the claim is preempted. MTD at 12-19. As to the UCL claim, Defendants argue that the claim is preempted and that Plaintiffs fail to state a claim. MTD at 19-21.

### A. Breach of Contract Claim

#### 1. Existence of a Contract

The breach of contract claim is brought by Bold LLC. Defendants argue that the breach of contract claim should be dismissed because there is no valid contract. MTD at 17-19. Bold LLC argues that the Terms of Use constitute a valid contract. MTD Opp. at 15-19.

Defendants assert that the Terms of Use constitute an improper "browsewrap" agreement. MTD at 17. Plaintiff Bold LLC counters that the Terms of Use are a valid "sign-in wrap" agreement. MTD Opp. at 16. The parties both agree that New York law applies. MTD Opp. at 16 & n.3; MTD Reply at 8-10. "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Berman v. Freedom Fin. Network*, 30 F.4th 849, 855 (9th Cir. 2022) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)).

"[A]n enforceable agreement may be found where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his to her assent to those terms.'" *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (quoting *Berman*, 30 F.4th at 856). To satisfy the first prong, "a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* (quoting *Berman*, 30 F.4th at 856). The Court considers "'the conspicuousness and placement of the "Terms of Use" hyperlink, other notices given to users of the terms of use, and the website's general design' in determining 'whether a reasonably prudent user would have inquiry notice of a browsewrap agreement.'" *Id.* (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). The Ninth Circuit has stated that the second prong is "relatively straightforward." *Id.* "A user's click of a button can be construed as an unambiguous

5

1 manifestation of assent only if the user is explicitly advised that the act of clicking will constitute
2 assent to the terms and conditions of an agreement." *Id.* (quoting *Berman*, 30 F.4th at
3 857). "[T]he notice must explicitly notify a user of the legal significance of the action she must
4 take to enter into a contractual agreement." *Id.* (alteration in original) (quoting *Berman*, 30 F.4th
5 at 858).

6 Here, as in *Oberstein*, the MPR Terms of Use " are not pure clickwrap because they do
7 not, upon some user action, request that users click on a box to confirm agreement before
8 proceeding. Nor are they pure browsewrap, as they are not hidden in links located at the bottom of
9 webpages. Rather, they lie somewhere in between." *See* 60 F.4th at 515. The Court looks to the
10 two-part test to determine whether Defendants had constructive notice of the MPR Terms of Use.

11 Under the first prong, the Court must determine whether the MPR Website "provides
12 reasonably conspicuous notice of the terms to which the consumer will be bound." *See Oberstein*,
13 60 F.4th at 515. As alleged in the FAC, the MPR Website takes users to a landing page with a
14 "Create My Resume" button. FAC ¶ 19. Underneath the button, it states: "By clicking create My
15 Resume, you agree to our Terms of Use and Privacy Policy." *Id.* The words "Terms of Use" and
16 "Privacy Policy" are in blue font and underlined, and they include links to the respective
17 documents. *Id.* The landing page appears below:



27 *Id.*
28 The Court determines that the MPR Website does provide reasonably conspicuous notice

6

of the MPR Terms of Use. A reasonable user would have seen the notice and been able to locate the Terms via hyperlink. The Court notes that the "Terms of Use" hyperlink "is conspicuously displayed directly . . . below the action button." *See Oberstein*, 60 F.4th at 516. Further, "the 'Terms of Use' hyperlink is conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent." *Id.*

The Court next turns to the second prong: whether the user took action that unambiguously manifested the user's assent to the agreement. *Oberstein*, 60 F.4th at 517. "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857 (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29-30 (2d Cir. 2002)). The language here—"By clicking create My Resume, you agree to our Terms of Use and Privacy Policy"—clearly satisfies this requirement. *See* FAC ¶ 19.

The Court therefore determines that Defendants had constructive notice, and the MPR Terms of Use are a valid contract.

### 2. Preemption

Defendants also argue that the breach of contract claim must be dismissed because it is preempted by the Copyright Act. MTD at 12-17. Plaintiffs counter that the breach of contract claim is not preempted because it includes an extra element. MTD Opp. at 12-15.

The Copyright Act provides "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by [the Act]," and "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a). The Ninth Circuit has explained that "[i]f a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (citing *Summit Mach. Tool Mfg. v. Victor CNC Sys.*, 7 F.3d 1434, 1439-40 (9th Cir. 1993); *Bowers v. Baystate Techs. Inc.*, 320 F.3d 1317, 1323-24 (Fed. Cir. 2003)). "Most courts have held that the Copyright Act does *not* preempt the enforcement of contractual rights." *Id.* (emphasis in original)

(collecting cases.

Bold LLC asserts that "the core allegation underlying [its] breach of contract claim is that Defendants violated the MPR Terms of Use related to inappropriate access, use, and circumvention of technical measures on the website." MTD Opp. at 14. The Terms of Use prohibit the "[u]se [of] any automated software or devices, such as spiders, robots or data mining techniques such as scraping, spidering, crawling or any other techniques[.]" FAC Ex. B at 12. Bold LLC argues that this provision prohibits not the copying and reproduction of content, but instead specific forms of access and misuse of the website. MTD Opp. at 14. It asserts that its "ability to control *how* users access, use, and technologically circumvent all data available on the MPR website—whether copyrighted material or not—is not a right contemplated by the Copyright Act" and therefore constitutes an "extra element." *Id.* at 14-15.

The Court finds *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962 (N.D. Cal. 2013) to be instructive. The court in that case also analyzed whether the Copyright Act claim preempted the breach of contract claim. *Id.* at 976-77. It explained that the "essence" of the breach of contract claim was that the defendants "breached provisions of the [Terms of Use] governing access to and permissible uses of [the plaintiff's] website." *Id.* at 977. The court ultimately decided that the contract claim was not preempted because "[t]he relevant provisions of the TOU do not merely prohibit copying or reusing content, but rather include accessing the website for inappropriate purposes, using the website to develop computer programs and services that interact with Craigslist, and circumventing technological measures intended to restrict access to the website." *Id.*

The Court here determines that there is an extra element to Bold LLC's breach of contract claim such that it is not preempted by the Copyright Act claim. The relevant provision of the TOU prohibits the use of certain software, devices, or data mining techniques in connection with the MPR website. *See* FAC Ex. B at 12. This provision prohibits actions other than the copying and reproduction of content. It contains an "extra element" separate from the Copyright Act claim. Bold LLC's breach of contract claim is therefore not preempted.

### 3. Conclusion

Defendants' motion to dismiss Bold LLC's breach of contract claim is DENIED.

### B. UCL Claim

Plaintiffs Bold LLC and Bold Limited brought a UCL claim. Defendants argue that these claims should be dismissed as preempted and for failure to state a claim. MTD at 19-21.

#### 1. Preemption

Defendants argue that the UCL claim is preempted by the Copyright Act claim. MTD at 19-20. They assert that the UCL claim is not qualitatively different from the Copyright Act claim. *Id.* Plaintiffs counter that the UCL claim is based on the "misappropriation, conversion, and invasion of Bold's property right in and to its website design and content, including the TTC." MTD Opp. at 20 (citing FAC ¶ 42). Plaintiffs argue that the UCL claim is based on Defendants' conduct, including data mining, which constitutes an invasion of property rights, including trespass to chattel. *Id.* They further argue that Defendants violated Bold's possessory interest in the computer systems running the MPR Website and that the breach of the MPR Terms of Use constitutes a separate basis for the UCL claim. *Id.*

A UCL claim is not preempted only if it "includes an 'extra element' that makes the right asserted *qualitatively different* from those protected under the Copyright Act." *Media.net Advert. FZ-LLC v. Netseer, Inc.*, 198 F. Supp. 3d 1083, 1087 (N.D. Cal. 2016) (emphasis in original) (quoting *Altera Corp.*, 424 F.3d at 1089). For the same reasons as discussed with respect to the breach of contract claim, the Court determines that the UCL claim brought by Bold LLC is not preempted. The UCL claim is based on actions—such as data mining and inappropriate access—that are not covered by the Copyright Act.

As to Bold Limited, the Court finds that the UCL claim, as pled, is preempted. Plaintiffs maintain that only Bold LLC is a party to the Terms of Use. *See* MTC Opp. at 4-5. And Bold Limited is not a party to the breach of contract claim. *See id.* Bold Limited's UCL claim cannot be based on Defendants' violation of the MPR Terms of Use. It must be based on the copyright violations, and it is therefore preempted by the Copyright Act. Plaintiffs suggest in the Opposition that the UCL claim may be based on trespass to chattels. MTD Opp. at 20. This theory is not laid

9

out in the FAC.  *See* FAC.  The Court will grant Plaintiff Bold Limited leave to amend its UCL claim to attempt to state a claim that is not preempted by the Copyright Act and that is not inconsistent with its position that it is not bound by the Terms of Use.  *Cf. eBay v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1072 (N.D. Cal. 2000) (determining trespass claim based on use of computer systems without authorization was not preempted by copyright claim because "[t]he right to exclude others from using physical personal property is not equivalent to any rights protected by copyright").

### 2. Failure to State a Claim

Defendants' also argue that Plaintiffs failed to state a claim under the UCL.  MTD at 20-21.  Because the Court has already determined that Bold Limited's UCL claim is preempted, it will focus on Bold LLC's UCL claim.

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).  Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).  Bold LLC maintains that it has pled all three theories.  *See* Opp. at 21-22.

Defendants argue that Bold LLC has not alleged a UCL claim under the unfair prong because it has not alleged facts that would amount to a violation of antitrust laws.  MTD at 21.  Bold LLC counters that it need not plead the specific elements of an antitrust claim, and its allegations that Defendants' conduct threatens or harms competition are sufficient.  Opp. at 21.  The unfair prong of the UCL "creates a cause of action for a business practice that is unfair even if not proscribed by some other law."  *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019).  While the definition of "unfair" is "in flux," California courts have coalesced around two tests.  *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007).  Some courts apply a balancing test in which the court "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  Others apply the "tethering test," which asks whether

the unfair act is "tethered to some legislatively declared policy" or whether there is "proof of some actual or threatened impact on competition." *Lozano*, 504 F.3d at 735. The Court here finds that Plaintiff Bold LLC has alleged a UCL claim under either test. Under the tethering test, although Plaintiff has failed to allege that Defendants' actions are tethered to any legislative policy, Bold LLC has sufficiently pled an actual or threatened impact on competition. Under the balancing test, the Court determines that Defendants' conduct has minimal utility, and the gravity of harm to Bold LLC is substantial.

Defendants argue that Bold LLC has not sufficiently pled a UCL claim under the fraudulent prong. MTD at 21. The Court agrees. Bold LLC has not adequately pled any fraudulent actions by Defendants. *See* FAC. This theory thus fails.

Finally, Defendants argue that Bold LLC has not sufficiently pled a UCL claim under the unlawful prong. MTD at 20. They assert that the FAC does not allege any conduct that is unlawful and not preempted by the Copyright Act claim. *Id.* Plaintiffs counter that they have alleged unlawful acts, "including copyright infringement, data mining (which can constitute a trespass to chattels), and breach of contract." MTD Opp. at 21. Bold LLC has not alleged copyright infringement—that claim is only brought by Bold Limited. *See* FAC. Further, as stated above, the Court determines that Plaintiffs did not adequately plead a theory of trespass to chattels. Therefore, all that remains is Bold LLC's breach of contract claim. The Court determined that this claim was not preempted and was adequately pled. This claim can serve as a predicate for the unlawful prong of the UCL. *See Deno v. State Farm Gen. Ins. Co.*, No. 22-cv-00513-JD, 2022 WL 4112358, at *2 (N.D. Cal. Sept. 9, 2022).

### 3. Conclusion

Defendants' motion to dismiss Bold LLC's UCL claim is DENIED. Defendants' motion to dismiss Bold Limited's UCL claim is GRANTED WITH LEAVE TO AMEND.

## IV. MOTION TO COMPEL ARBITRATION

Defendants seek to compel to arbitration the breach of contract claim and the UCL claim. MTC at 6-8.

### A. Bold LLC's state law claims

The parties agree that if the Court determines that the MPR Terms of Use constitute a valid contract, then Bold LLC's breach of contract claim and UCL claim should be compelled to arbitration. MTC at 6-8; MTC Opp. at 4-5. The Court has determined that the MPR Terms of Use was a valid contract as to Bold LLC and Defendants. The Court COMPELS ARBITRATION of to Bold LLC's breach of contract claim and UCL claim.

### B. Bold Limited's UCL claim

The parties disagree as to how the Court should address the UCL claim brought by Bold Limited. Defendants argue that the claim should be compelled to arbitration. MTC at 6-8; Reply at 3-5. Plaintiffs argue that Bold Limited was not bound by the MPR Terms of Use, and therefore Bold Limited's UCL claim should not be compelled to arbitration. MTC Opp. at 4-5. Plaintiffs instead assert that Bold Limited's UCL claim should be stayed pending arbitration of Bold LLC's state law claims. *Id.* at 5.

The Court previously dismissed Bold Limited's UCL claim with leave to amend. But the Court will here address whether Bold Limited is bound by the arbitration agreement. Defendants provide three different theories as to why Bold Limited is bound by the arbitration agreement. MTC Reply at 2-5. The Court will address each in turn.

First, Defendants argue that Bold Limited is a party to the arbitration agreement under its terms. MTC Reply at 2-3. The Court disagrees. The arbitration provision states that "any dispute of any kind between you and Provider arising under these Terms shall be resolved through binding arbitration." FAC, Ex. A at 10, ¶ 24. And Bold LLC is the "Provider" for purposes of the Terms of Use. FAC, Ex. A at 2. Defendants point the Court to Paragraph 7, which states: "For purposes of this section, 'Provider' includes all of Provider's affiliates, including direct and indirect subsidiaries." FAC, Ex. A at 4, ¶ 7. But that definition of Provider expressly only applies "[f]or purposes of" paragraph 7, which does not include the arbitration provision. *Id.*

Second, Defendants argue that Bold Limited is bound to the arbitration agreement through agency principles. MTC Reply at 3-4. The Ninth Circuit has "explained that 'nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency

12

1   principles.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Letizia v.*

2   *Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986)). Defendants point the Court

3   to *Prograph International Inc. v. Barhydt*, 928 F. Supp. 983 (N.D. Cal. 1996), in which the court

4   stated that "[a]gency principles have been held to permit nonsignatory corporations to compel

5   arbitration under arbitration clauses signed by their corporate parents, subsidiaries, or affiliates, at

6   least when the allegations against the nonsignatory corporation do not differ substantially from

7   those against its signatory affiliate." MTC Reply at 3-4 (quoting *Prograph Int'l Inc.*, 928 F. Supp.

8   at 990). First, Defendants' argument centers on enforcement of an arbitration agreement *by* a

9   nonsignatory, not *against* a nonsignatory, which is the situation here. MTC Reply at 3-4. Second,

10  the allegations of Bold Limited do differ from those of Bold LLC. Bold LLC's claims are focused

11  on Defendants' improper access of the MPR Website, which violated the MPR Terms of Use, and

12  Bold Limited's claims are focused on Defendants' violation of its copyright. Bold Limited is not

13  bound to the arbitration agreement under agency principles.

14        Third, Defendants argue that Bold Limited is bound to the arbitration agreement by

15  equitable estoppel. MTC Reply at 4-5. As Defendants state, "[w]here a nonsignatory seeks to

16  enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances."

17  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013). First, it applies "when a signatory

18  must rely on the terms of the written agreement in asserting its claims against the nonsignatory or

19  the claims are 'intimately founded in and intertwined with' the underlying contract." *Id.* (quoting

20  *Goldman v. KPMG LLP,* 173 Cal. App. 4th 209, 221 (2009)). Second, it applies "when the

21  signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and

22  another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately

23  connected with the obligations of the underlying agreement.'" *Id.* (quoting *Goldman,* 173 Cal.

24  App. 4th at 219). First, the nonsignatory—Bold Limited—is not the one seeking to enforce the

25  arbitration clause here. Second, even if it was, neither of the factual circumstances applies here.

26  There are no claims being brought against Bold Limited. And Bold Limited is not basing its

27  claims on the MPR Terms of Use. Bold Limited is not bringing a breach of contract claim, and its

28  UCL claim is not based on violation of the contract terms. Therefore, Bold Limited is not bound

1    to the arbitration agreement based on equitable estoppel.

2    The motion to compel arbitration of Bold Limited's UCL claim is therefore DENIED.  The
3    Court will STAY Bold Limited's UCL claim.

### C. Stay of Copyright Claim

Defendants argue that Bold Limited's Copyright Act claim should be stayed pending arbitration.  MTC at 8; MTC Reply at 5-6.  Plaintiffs argue that the copyright claim brought by Bold Limited should go forward at this time.  MTC Opp. at 5-9.

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  "A motion to stay, therefore, is mandatory and must be granted as to all matters within the scope of the arbitration agreement.  It is, however, within a district court's discretion whether to stay, for 'considerations of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration." *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 990 (N.D. Cal. 2016) (quoting *BrowserCam, Inc. v. Gomez, Inc.*, No. 08–CV–02959–WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009)).  It is within the district court's discretion as to whether to stay litigation among the non-arbitrating parties pending the outcome of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983).  As to the granting of a discretionary stay, the Ninth Circuit has provided:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed.  Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  Each party has provided argument as to why these factors are or are not satisfied.  MTC Opp. at 5-9; MTC Reply at 5-6.

14

1    As to the first factor, Bold Limited argues that the infringement is ongoing, and the
2 indefinite period of the requested stay exacerbates the harm. MTC Opp. at 6-7. Defendants
3 counter that the requested stay is not "indefinite," but rather that the state law claims subject to
4 arbitration will proceed efficiently. MTC Reply at 5-6. They also argue that the case is in its early
5 stages and discovery has just commenced. *Id.* at 6. The Court determines that damage could
6 result to Bold Limited from a stay. Bold Limited alleges that the infringement of its copyrights is
7 ongoing and "will continue to cause Plaintiff Bold Limited great and irreparable injury." *See* FAC
8 ¶ 40. The Court agrees that Bold Limited would be damaged by Defendants' alleged continued
9 infringement of its copyright. *Cf. Whole Body Rsch., LLC v. Dig. MD, LLC*, No. LA CV18-01233
10 JAK (JCx), 2018 WL 3830902 (C.D. Cal. July 3, 2018) ("Further, a stay would prevent Plaintiffs
11 from seeking to enforce their intellectual property rights."); *Broadcom Corp. v. Sony Corp.*, No.
12 SACV 16-1052 JVS (JCGx), 2017 WL 7833636, at *2-3 (C.D. Cal. Feb. 13, 2017) (stating the
13 plaintiff would be damaged by a stay where patent infringement would be ongoing). Further, it is
14 not clear how long the arbitration will take. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d
15 857, 864 (9th Cir. 1979) ("A stay should not be granted unless it appears likely the other
16 proceedings will be concluded within a reasonable time in relation to the urgency of the claims
17 presented to the court.").
18    As to the second factor, Defendants argue that they will suffer hardship because the
19 discovery required for the copyright claim would be duplicative of that required for the state law
20 claims. MTC Reply at 6. Plaintiff Bold Limited argues that the copyright claim is distinct from
21 the state law claims, which require an additional set of facts. MTC Opp. at 7-8. The Court finds
22 that any hardship is minimal. As the Ninth Circuit has recognized, "being required to defend a
23 suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning
24 of *Landis*." *Lockyer*, 398 F.3d at 1112.
25    Finally, the Court looks at the third factor: "the orderly course of justice measured in
26 terms of the simplifying or complicating of issues, proof, and questions of law which could be
27 expected to result from a stay." *Lockyer*, 398 F.3d at 1110. Defendants argue that the stay would
28 promote judicial economy because the copyright claim is inextricably intertwined with the claims

15

going to arbitration. MTC Reply at 6. Plaintiff Bold Limited argues that the copyright claim is not inextricably intertwined with Bold LLC's state law claims, as they "are brought by separate plaintiffs, implicate distinct legal issues, and will result in separate outcomes." MTC Opp. at 8. They also argue that there is not a risk of inconsistent rulings. *Id.* at 8-9. The Court agrees with Plaintiff that a stay would not further the orderly course of justice. For the reasons discussed above with regard to preemption, Bold Limited's copyright claim involves distinct legal issues from Bold LLC's state law claims. Further, proceeding with the copyright claim would not result in a waste of judicial resources because the claim will need to be litigated in this Court regardless of the outcome of arbitration. *See Congdon*, 226 F. Supp. 3d at 990 ("This Court, however, finds that proceeding with the litigation as to the Opt–Out Plaintiffs in this case would not result in a waste of judicial resources. The parties do not dispute that, regardless of the outcome of the arbitration, the claims of the Opt–Out Plaintiffs will need to be litigated in this court."). And the Court agrees that the risk of inconsistent results is minimal, if any.

In weighing the *Landis* factors, the Court determines that a stay of the copyright act claim is not appropriate. The Court therefore DENIES Defendants' motion to stay the copyright claim.

### D. Stay of Discovery

Defendants also argue that discovery should be stayed pending resolution of the motion to compel arbitration. MTC at 8. The parties indicated at the hearing on the motion to compel arbitration that substantial discovery has already taken place. Further, the Court here is resolving the motion to compel arbitration. The Court DENIES Defendants' motion to stay discovery.

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss Plaintiff Bold LLC's breach of contract claim is DENIED;

2. Defendants' motion to compel arbitration of Plaintiff Bold LLC's breach of contract claim is GRANTED;

3. Defendants' motion to dismiss Plaintiff Bold LLC's UCL claim is DENIED;

4. Defendants' motion to compel arbitration of Plaintiff Bold LLC's UCL claim is

1 GRANTED;

2     5.    Defendants' motion to dismiss Plaintiff Bold Limited's UCL claim is GRANTED
3 WITH LEAVE TO AMEND;

4     6.    Defendants' motion to compel arbitration of Plaintiff Bold Limited's UCL claim is
5 DENIED;

6     7.    Plaintiff Bold Limited's UCL claim is STAYED;

7     8.    If Plaintiff Bold Limited chooses to amend its UCL claim, such amendment
8 SHALL be filed no later than 21 days after the stay is lifted;

9     9.    Defendants' motion to stay the Copyright Act claim is DENIED;

10     10.    Defendants' motion to stay discovery is DENIED;

11     11.    The parties SHALL commence arbitration within 60 days or show cause why they
12 have not done so; and

13     12.    The parties shall advise the Court of the conclusion of the arbitration within ten
14 days of such conclusion.

Dated: June 22, 2023

*[signature]*

BETH LABSON FREEMAN
United States District Judge