1
2
3
**UNITED STATES DISTRICT COURT**
4
**NORTHERN DISTRICT OF CALIFORNIA**
5
**SAN JOSE DIVISION**
6
7 | BOLD LIMITED, et al.,                          Case No.  22-cv-01045-BLF
8 |                 Plaintiffs,
9 |         v.                                     **ORDER GRANTING MOTION TO DISQUALIFY COUNSEL**
10 | ROCKET RESUME, INC., et al.,                  [Re:  ECF No. 129]
11 |                 Defendants.
12
13      Before the Court is Plaintiff Bold Limited's motion to disqualify Alston & Bird LLP,
14 counsel for Defendants Rocket Resume, Inc. and Stephen Zimmerman.  ECF No. 129 ("Mot.").
15 Defendants oppose the motion.  ECF No. 154 ("Opp.").  Bold filed a reply.  ECF No. 162
16 ("Reply").  The Court held a hearing on January 18, 2024.  ECF No. 186.
17      For the reasons explained below, the Court GRANTS Bold's motion and disqualifies
18 Allston & Bird.
19 **I.    BACKGROUND**
20      **A.    The Current Litigation**
21      This case was brought by Plaintiffs Bold Limited and Bold LLC (collectively "Bold")
22 against Defendants Rocket Resume, Inc. and Stephen Zimmerman.  Bold owns and operates a
23 website called "MyPerfectResume" ("MPR Website"), which is available at
24 www.myperfectresume.com.  ECF No. 51 ("FAC") ¶¶ 1, 11–12.  The MPR Website, among other
25 things, helps users create resumes and cover letters.  *Id.*  When creating a resume on the MPR
26 Website, users can select a job title, and they will be presented with a filtered list of job
27 descriptions.  *Id.* ¶ 16.  Bold organizes these original job descriptions in a database called its Text
28 Tuner Content ("TTC").  *Id.* ¶ 17.  Bold registered the 2018 version of the TCC with the U.S.

United States District Court
Northern District of California

United States District Court
Northern District of California

Copyright Office (TX0008919525) and it has registered annual updates to the TTC for 2019 (TX0008919529) and 2020 (TX0008919521). *Id.* ¶ 17. Bold also obtained U.S. Copyright Registration TX0008436147 for the MPR Website. *Id.* ¶ 18.

Rocket Resume and its founder and CEO, Zimmerman, operate a website that Bold alleges is nearly identical to the MPR Website: www.rocket-resume.com ("Rocket Resume Website"). FAC ¶ 24. Bold alleges that the Rocket Resume Website has "a very similar look, color scheme, and design"; incorporates an identical flow of steps to resume creation; and incorporates Bold's original job descriptions from the TTC. *Id.* ¶¶ 24, 26.

Bold's First Amended Complaint originally asserted three causes of action: (1) copyright infringement in violation of 17 U.S.C. § 101 *et seq.*; (2) unfair competition in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and (3) breach of contract. FAC ¶¶ 33–58. Bold Limited brought the copyright claim and a UCL claim, while Bold LLC brought the breach of contract claim and a UCL claim. *See id.* On June 22, 2023, the Court denied Defendants' motion to dismiss the UCL and breach of contract claims but compelled Bold LLC's claims to arbitration and stayed Bold Limited's UCL claim. ECF No. 77 at 16–17. Thus, only Bold Limited's copyright claim remains active.

**B.  Alston & Bird's Prior Representations of Bold**

Bold Limited, then known as LiveCareer Ltd., originally retained Alston & Bird in February 2013 to handle an intellectual property litigation matter. ECF No. 129-1 ("Lopez Decl.") ¶ 3; ECF No. 129-2 ("Lopez Decl. Ex. A") (engagement letter). The scope of Alston & Bird's representation of Bold expanded to include general corporate advice, tax structuring, human resources, privacy, terms and conditions, intercompany agreements, mergers and acquisitions, and intellectual property litigation and counseling. Lopez Decl. ¶ 4. Bold identifies at least three prior representations that it alleges are substantially related to the current representation:

- IP Transfer Memo: Alston & Bird attorneys Heather Ripley and Edward Tanenbaum authored a memorandum dated March 23, 2017, that "provided Bold with attorney-client privileged recommendations regarding Bold's corporate structure and the transfer and licensing of intellectual property among related Bold entities." Lopez Decl. ¶ 6. Both

1     Ripley and Tanenbaum continue to be partners at Alston & Bird.  *See id.* ¶ 11.

2     •   <u>Intercompany IP License Agreements:</u>  Alston & Bird attorney James Sullivan drafted

3     Bold's operative intercompany IP license agreements.  Lopez Decl. ¶ 7; ECF No. 129-3

4     ("Lopez Decl. Ex. B") (example of a Bold intercompany IP license).  Sullivan continues to

5     be a partner at Alston & Bird.  *See* Lopez Decl. ¶ 11.

6     •   <u>Copyright Enforcement Actions:</u>  From approximately 2014 to 2015, Alston & Bird

7     attorneys Ryan Koppelman, Deepro Mukerjee, Alexander Lorenzo, and Lance Soderstrom

8     represented LiveCareer Ltd. in two copyright actions filed in the Northern District of

9     California.  *See LiveCareer Ltd. v. Resume Companion LLC*, 3:14-cv-03336-JST (N.D.

10    Cal. 2014) ("*Resume Companion*"); *LiveCareer Ltd. v. Mint Media, Inc.*, 3:14-cv-03420-

11    MEJ (N.D. Cal. 2014) ("*Mint Media*").[1]  The complaints in these actions allege that the

12    defendants copied "significant portions of the text from the LiveCareer Websites" and "the

13    layout and design of the LiveCareer Websites."  *Resume Companion* ECF No. 1 ¶¶ 19–21;

14    *Mint Media* ECF No. 1 ¶¶ 18–20.  The LiveCareer Websites at issue in these cases

15    included the MPR Website.  *See Resume Companion* ECF No. 1 ¶ 11; *Mint Media* ECF

16    No. 1 ¶ 11.  Koppelman and Lorenzo continue to be partners at Alston & Bird.  *See* Lopez

17    Decl. ¶ 11.  Mukerjee and Soderstrom have since left Alston & Bird and are now partners

18    at Katten Muchin Rosenman LLP.  *See id.* ¶ 9.

19 Alston & Bird's representation of Bold ended on July 27, 2018.  Lopez Decl. ¶ 9.  After leaving

20 Alston & Bird, Mukerjee and Soderstrom continued to represent Bold, including by filing this

21 lawsuit in 2022.  *See* ECF No. 1.  Latham & Watkins LLP has since been substituted as lead

22 counsel for Bold in place of Katten.  ECF No. 32.

23

24    [1] Although Bold has failed to submit the complaints from these actions as exhibits in this case, the

25 Court *sua sponte* takes judicial notice of the complaints.  *See Bryan v. City of Carlsbad*, 297 F.
Supp. 3d 1107, 1115 (S.D. Cal. 2018) ("Court may take judicial notice *sua sponte*.").  "A court

26 may . . . take judicial notice of the existence of another court's opinion or of the filing of pleadings
in related proceedings; the Court may not, however, accept as true the facts found or alleged in

27 such documents."  *GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F.Supp.3d 1007, 1019
(C.D. Cal. 2017) (internal quotations omitted).  Accordingly, the Court takes judicial notice of the

28 complaints in *Resume Companion* and *Mint Media*, including the claims made in those cases, but
does not take judicial notice of the facts within them.

**C.    Alston & Bird's Involvement in the Current Litigation**

Defendants were initially represented by Orrick, Herrington, & Sutcliffe LLP.  Defendants then substituted Dykema Gossett LLP in place of Orrick.  ECF No. 39.  Gibson Dunn & Crutcher LLP are now lead counsel for Defendants.  ECF Nos. 99–100 (appearances of Gibson Dunn attorneys).

In July 2023,[2] Defendants retained Chaka Patterson of Alston & Bird as "in-house lawyer" or "general counsel" to Rocket Resume.  ECF No. 129-7 ("Elliott Decl. Ex. B") at 23:14–20, 101:23–24; ECF No. 129-10 ("Elliott Decl. Ex. E") at 2 (Patterson identifying himself as "outside general counsel").  Patterson joined Alston & Bird as a partner in July 2021.  ECF No. 154-1 ("Cox Decl.") ¶ 6.  At his deposition, Zimmerman also identified Dana Zottola, a senior associate at Alston & Bird, as an "advisor" to Rocket Resume.  Elliott Decl. Ex. B at 31:2–12; Elliott Decl. Ex. E at 2 (identifying Zottola as an "advisor").  Zottola is Zimmerman's wife.  ECF No. 129-8 ("Elliott Decl. Ex. C") at 43:4–5.

On August 10, 2023, counsel for Bold received an email from Dykema Gossett, then counsel for Defendants, which copied Patterson.  ECF No. 129-6 ("Elliott Decl. Ex. A").  Patterson appeared in this case on August 8, 2023.  ECF No. 106.  Zottola has not appeared in this case.

On August 22, 2023, counsel for Bold contacted counsel for Defendants, identifying the potentially disqualifying conflict of interest on the part of Alston & Bird.  ECF No. 129-9 ("Elliott Decl. Ex. D").  In a series of emails between counsel from late August 2023 to early October 2023, Alston & Bird denied any conflict of interest.  *See, e.g.*, Elliott Decl. Ex. E; ECF No. 129-12 ("Elliott Decl. Ex. G"); ECF No. 129-14 ("Elliott Decl. Ex. I").  In a letter dated September 12, 2023, Alston & Bird's general counsel stated, "Out of an abundance of caution, . . . [Alston & Bird] has implemented an ethical screen to prevent Mr. Patterson's access to materials or communications with attorneys who performed past work for Bold regarding any Bold matters."

---

[2] The record is unclear as to the date on which Patterson began representing Rocket Resume. *Compare* Elliot Decl. Ex. B (Zimmerman testifying in a deposition that Patterson was hired six to eight weeks before August 15, 2023), *with* Elliott Decl. Ex. E (Patterson stating that he began representing Rocket Resume on July 5, 2023), *and* ECF No. 154-1 ("Cox Decl.") ¶ 6 (stating that Patterson was retained by Defendants on July 25, 2023).

United States District Court
Northern District of California

Elliott Decl. Ex. G.  In an email dated September 12, 2023, Patterson stated, "[O]ut of an abundance of caution, though not required by the Protective Order, [Zottola] has restricted access to documents and information."  ECF No. 129-15 ("Elliott Decl. Ex. J").  In an email dated October 5, 2023, Patterson elaborated that "Zottola has voluntarily chosen not to access, has not accessed and will not access any Bold documents or information in regard to this matter."  *Id.*

On November 10, 2023, Bold filed the instant motion which seeks to disqualify Alston & Bird from representing Defendants.  Mot. at Notice.

### D.  Defendants' Discovery

Bold argues that Defendants are attempting to insert issues from prior representations into this case by seeking discovery about them.  Mot. at 4–5.  For example, Defendants sought discovery on Bold's websites, damages, organizational structure, and other infringement actions.  *See* ECF No. 129-18 ("Elliott Decl. Ex. M") at 4–5 (requesting documents regarding Bold's websites, Bold's damages in this case, and Bold's steps taken to address infringement by third-parties); ECF No. 129-19 ("Elliott Decl. Ex. N") at 6–8, 10 (requesting documents regarding Bold's licenses, its resume creation websites, Bold's financial information, infringement accusations and actions, and the relationships between Bold entities); ECF No. 129-10 ("Elliott Decl. Ex. O") at 4, 7 (requesting documents regarding the relationship between Bold entities).

Similarly, Defendants pursued information about Bold's corporate structure, market share, and infringement disputes in a Rule 30(b)(6) deposition.  *See* ECF No. 129-16 ("Elliott Decl. Ex. K") at 185:6–192:20, 259:19–261:3, 263:2–264:5 (deposition of Bold's Rule 30(b)(6) witness in which lead counsel for Defendants asked questions pertaining to Bold's corporate structure); ECF No. 129-17 ("Elliott Decl. Ex. L") at 6–7 (Defendants' notice of deposition pursuant to Rule 30(b)(6) in which Defendants identify as topics Bold's damages, the relationships between Bold entities, Bold's market share of the career services industry, and facts surround Bold's disputes or communications with third parties regarding the 2018–2022 TCC or the MPR Website from 2017 to the present).  Finally, on September 22, 2023, lead counsel for Defendants sent a letter to counsel for Bold, alleging that "Bold was 'engaging in unfair competition in the marketplace' because ███████████████████████████████████████████████████████

1 ████████████ ECF No. 129-5 ("Elliott Decl.") ¶ 16.

2 **II.   LEGAL STANDARD**

3       All attorneys who practice before this Court are required to "[b]e familiar and comply with

4 the standards of professional conduct required of members of the State Bar of California."  Civ.

5 L.R. 11-4(a)(1).  In determining whether to disqualify counsel, this Court therefore applies

6 California law.  *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); *Hitachi, Ltd. v.*

7 *Tatung Co.*, 419 F.Supp.2d 1158, 1160 (N.D. Cal. 2006).  The party seeking disqualification bears

8 the burden of establishing by a preponderance of the evidence the existence of a disqualifying

9 prior representation.  *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 11–CV–01189–LHK, 2011

10 WL 4635176, at *3 (N.D. Cal. Oct. 5, 2011) (citing *H.F. Ahmanson & Co. v. Saloman Bros.*, 229

11 Cal.App.3d 1445, 1452 (1991)).

12       "The right to disqualify counsel is a discretionary exercise of the trial court's inherent

13 powers."  *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F.Supp.2d 914, 918

14 (N.D. Cal. 2003).  As such, the decision to disqualify counsel for a conflict of interest is a

15 discretionary one that requires the careful balancing of a number of factors.  *Trone v. Smith*, 621

16 F.2d 994, 999 (9th Cir. 1980); *see also Guifu Li*, 2011 WL 4635176, at *3.  These factors include:

17 "[A] client's right to chosen counsel, an attorney's interest in representing a client, the financial

18 burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies

19 the disqualification motion."  *People ex rel Dept. of Corporations v. SpeeDee Oil Change*

20 *Systems, Inc.* ("*SpeeDee Oil*"), 20 Cal.4th 1135, 1145 (1999).  Given the potential for abuse,

21 motions for disqualification are subjected to strict judicial scrutiny, and a court examines such

22 motions carefully "to ensure that literalism does not deny the parties substantial justice."  *Id.* at

23 1144; *see also Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1049 (9th

24 Cir. 1985).  However, "[t]he paramount concern must be to preserve public trust in the scrupulous

25 administration of justice and the integrity of the bar" and "[t]he important right to counsel of one's

26 choice must yield to ethical considerations that affect the fundamental principles of our judicial

27 process."  *SpeeDee Oil*, 20 Cal.4th at 1145.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### III.    DISCUSSION

Bold argues that Alston & Bird should be disqualified under California Rules of Professional Conduct 1.9 and 1.10 because prior representations by Alston & Bird attorneys are substantially related representations that would disqualify the attorneys involved, and that disqualification is imputed to Alston & Bird.  Mot. at 6–9.  Bold also argues that Alston & Bird's ethical screening measures do not overcome the presumption of vicarious disqualification.  *Id.* at 9–10.  Defendants respond that prior representations by Alston & Bird attorneys are not substantially related to this case.  Opp. at 4–8.  Defendants argue that no attorney currently at Alston & Bird possesses confidential information relevant to this case.  *Id.* at 8–9.  Defendants also argue that vicarious disqualification of Alston & Bird is unwarranted because Patterson and Zottola have not obtained any confidential information.  *Id.* at 9.  Finally, Defendants argue that Bold waived the right to move for disqualification.  *Id.* at 10.

### A.    Whether Bold Waived Disqualification

Before proceeding to the merits, the Court first considers whether Bold has waived disqualification.  Defendants argue that Bold waived the right to move for disqualification because it waited three months from Patterson's appearance to move for disqualification.  Opp. at 10.  Bold responds that it did not delay because after learning about the potential conflict, it attempted to engage with Defendants and explore the issue before engaging in motion practice.  Reply at 4–5.

The Court agrees with Bold.  "It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right."  *Diva Limousine, Ltd. v. Uber Techs., Inc.*, No. 18-CV-05546-EMC, 2019 WL 144589, at *14 (N.D. Cal. Jan. 9, 2019) (quoting *Tr. Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983)).  Under California law, "the delay has to be extreme or unreasonable before it operates as a waiver."  *Liberty Nat'l Enterprises, L.P. v. Chicago Title Ins. Co.*, 194 Cal.App.4th 839, 845 (2011); *accord River W., Inc. v. Nickel*, 188 Cal.App.3d 1297, 1311 (1987).  In this case, the earliest that Bold would have been aware of the conflict would have been when Patterson was copied on a July 10, 2023 email from Defendants' counsel to Bold's counsel.  *See* Elliott Decl. Ex.

A.  Patterson did not appear in the case until August 8, 2023.  ECF No. 106.  Bold first raised the issue to Defendants on August 22, 2023, about six weeks after the email and exactly two weeks after Patterson appeared.  Elliott Decl. Ex. D.  Although Bold did not file its motion to disqualify until November 10, 2023, about three months after it was first put on notice of the potential conflict, Bold did not sit on its rights.  From August to early October, Bold communicated with Defendants to resolve the issue before resorting to motion practice.  *See* Elliott Decl. Exs. D–L.  Under these circumstances, the Court does not find any alleged delay extreme or unreasonable.  *Cf. QuickLogic Corp. v. Konda Techs., Inc.*, 618 F.Supp.3d 873, 882 (N.D. Cal. 2022) (finding waiver of disqualification where the moving party waited "nearly seven months into litigation, and after a failed motion to dismiss" to raise any suggestion of disqualification); *Chartwell Staffing Servs. Inc. v. Am. Int'l Indus. Inc.*, No. 221CV03250JVSSKX, 2021 WL 5927845, at *3 (C.D. Cal. Aug. 10, 2021) (finding waiver of disqualification where the moving party continued litigating the case on the merits for three months while aware of the conflict).  Thus, the Court concludes that Bold did not waive disqualification.

### B.    Whether Alston & Bird Should Be Disqualified

The law imposes two requirements that must be met in order for the Court to disqualify counsel.  First, counsel must have violated the Rules of Professional Conduct.  To find that Alston & Bird has violated the Rules of Professional Conduct in the circumstances of this case, the Court must first determine whether any of the three prior representations identified by Bold is substantially related to the current representation such that the Alston & Bird attorneys involved would be disqualified under Rule 1.9.  The Court must then determine whether that conflict may be imputed to all attorneys at Alston & Bird under Rule 1.10 such that the firm would be disqualified.  Second, the Court must conclude that it is appropriate to order disqualification.  In doing so, the Court evaluates whether the equities weigh against disqualification.  *See Klein v. Facebook, Inc.*, No. 20-CV-08570-LHK, 2021 WL 3053150, at *4, *8 (N.D. Cal. July 20, 2021) (noting that disqualification requires a violation of the Rules of Professional Conduct and that the Court find disqualification is appropriate in light of equitable considerations); *Diva Limousine*, 2019 WL 144589, at *3 (same); *see also Kirk v. First Am. Title Ins. Co.*, 183 Cal.App.4th 776, 816

(2010), as modified (May 6, 2010) (similar).

### i. Whether Any of the Prior Representations Is Substantially Related to the Current Representation

Bold's allegations involve conflicts in "successive representations," rather than "concurrent representations." Under California Rule of Professional Conduct 1.9(a), "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent." California courts addressing disqualification in successive representations apply a "substantial relationship" test. Under this test, "[w]here the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation . . . is *presumed* and disqualification of the attorney's representation of the second client is mandatory." *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal.App.4th 698, 706 (2003) (quoting *Flatt v. Superior Ct.*, 9 Cal.4th 275, 283 (1994)). When a substantial relationship is shown, "it is well settled actual possession of confidential information need not be proved in order to disqualify the former attorney." *Ahmanson*, 229 Cal.App.3d at 1452.

"[W]hether an attorney should be disqualified in a successive representation case turns on two variables: (1) the relationship between the legal problem involved in the former representation and the legal problem involved in the current representation, and (2) the relationship between the attorney and the former client with respect to the legal problem involved in the former representation." *Jessen*, 111 Cal.App.4th at 709. "[W]hen ruling upon a disqualification motion in a successive representation case, the trial court must first identify where the attorney's former representation placed the attorney with respect to the prior client." *Id.* at 710. If the prior relationship is sufficiently direct, such as when a lawyer is personally involved in providing legal services to the former client, "then it must be presumed that confidential information has passed to the attorney" and the Court will not look to whether confidential information was actually exchanged during the course of the former relationship. *Id.* at 709.

The Court then looks to "the strength of the similarities" between the legal problems in the current and former representations. *Id.* Analysis of these similarities requires the Court to look to the "subject matter," rather than simply strict facts and issues involved in a particular action. *Id.* at 711. Put differently, the subject of a representation includes "information material to the evaluation, prosecution, settlement or accomplishment of the litigation or transaction given its specific legal and factual issues." *Id.* at 713; *see also Victaulic Co. v. Am. Home Assurance Co.*, 80 Cal.App.5th 485, 512 (2022) ("[T]o support disqualification the information acquired during the first representation must be material to the second; that is, directly at issue in, or have some critical importance to, the second representation." (cleaned up) (quoting *Wu v. O'gara Coach Co., LLC*, 38 Cal.App.5th 1069, 1083 (2019))).

a.  Direct Relationship

As an initial matter, the parties agree that Alston & Bird attorneys had direct relationships with Bold in the prior representations. *See* Mot. at 7 (arguing that a direct relationship existed between Bold and the Alston & Bird attorneys who provided legal advice and services to Bold); Opp. at 5 ("While Alston acknowledges that certain of its attorneys previously had such 'direct' relationships with Bold years ago, it is beyond dispute that neither Mr. Patterson nor Ms. Zottola has ever had a direct relationship with Bold."). However, the parties are not clear about which Alston & Bird attorneys had a direct relationship with Bold.

Bold's briefing suggests that the conflicts of "at least 26 current [Alston & Bird] attorneys who did legal work for Bold" may be imputed to the firm. Mot. at 8; *see also* Reply at 2. However, Bold has the burden of showing a substantial relationship, and it has failed to produce sufficient evidence for the Court to determine whether most of the 26 attorneys identified had a direct relationship with Bold. Bold identified the 26 attorneys in question and noted that they "were either identified as timekeepers on Bold's invoices . . . or were identified as authors or senders of work product from Alston & Bird." Lopez Decl. ¶ 11. But Bold has not produced evidence regarding the time spent by specific attorneys on the earlier representation, and for most of these attorneys, Bold has not produced evidence of the type of work the attorney performed or evidence of the potential that the attorney was exposed to formulation of policy or strategy. *See*

10

1    *Ahmanson*, 229 Cal.App.3d at 1457 (noting that time spent by the attorney on the earlier case, the

2    type of work performed, and the attorney's possible exposure to formulation of policy or strategy

3    are relevant to whether the attorney had a direct relationship with the former client).  The fact that

4    the 26 attorneys identified were timekeepers or that they sent work product to Bold is insufficient

5    to demonstrate that these attorneys were personally involved in providing legal services under

6    California law.  *See id.* (distinguishing between lawyers heavily involved in a particular matter

7    from those "who enter briefly on the periphery for a limited and specific purpose").

8        That said, the Court finds that current Alston & Bird partners Ripley, Tanenbaum,

9    Sullivan, Koppelman, and Lorenzo and former Alston & Bird attorneys Mukerjee and Soderstrom

10   had a sufficiently direct relationship with Bold such that the Court may presume that these

11   attorneys obtained confidential information in the course of the prior representations.  *See Jessen*,

12   111 Cal.App.4th at 709.  Bold has provided sufficient evidence, which Defendants do not contest,

13   that these seven attorneys had key roles in the three prior representations—Ripley and Tanenbaum

14   authored the IP Transfer Memo; Sullivan drafted Bold's operative intercompany IP license

15   agreement; and Koppelman, Lorenzo, Mukerjee, and Soderstrom are listed as counsel for

16   LiveCareer on the *Resume Companion* and *Mint Media* complaints.  *See* Lopez Decl. ¶¶ 6, 7, 11;

17   *Resume Companion* ECF No. 1; *Mint Media* ECF No. 1; *see also Sierra v. Costco Wholesale

18   Corp.*, 630 F.Supp.3d 1199, 1206 (N.D. Cal. 2022) (finding a direct relationship where an attorney

19   "handled cases for [the former client] from inception through trial").

20       Thus, the Court may presume that Ripley, Tanenbaum, Sullivan, Koppelman, Lorenzo,

21   Mukerjee, and Soderstrom received confidential information during the course of their prior

22   representations and the only question that remains under Rule 1.09(a) is whether the subject matter

23   of any of the prior representations are sufficiently similar to the current representation such that

24   these attorneys would be disqualified from representing Defendants in this action.  *See Jessen*, 111

25   Cal.App.4th at 711; *Sierra*, 630 F.Supp.3d at 1206.

26           b.   Strength of the Similarities

27       Bold argues that the Alston & Bird attorneys involved in the IP Transfer Memo and Bold's

28   intercompany IP license agreement advised Bold on its organizational structure and the transfer

United States District Court
Northern District of California

11

and licensing of IP among Bold entities.  *See* Mot. at 7.  Bold argues that these topics bear on this case because Defendants have sought discovery on Bold's corporate structure and licensing strategy, which relate to Bold's entitlement to lost profits and valuation of copyrights.  *Id.*  Bold also argues that these topics are material to Defendants' theory that Bold is engaging in unfair competition.  *Id.*  Bold next argues that the attorneys involved in the 2014 copyright enforcement actions obtained confidential information about Bold's copyright registration and enforcement practices and the value that Bold places on its IP portfolio.  *Id.* at 8.

Defendants argue that this case is about Bold's TTC database, which was registered with the United States Copyright Office on October 19, 2020, and thus this lawsuit does not implicate the prior representations, which concluded over five years ago.  Opp. at 6.  On the 2014 copyright enforcement actions, Defendants argue that the 2014 lawsuits involved claims that competitor websites copied the look and feel of the MPR Website, a claim that Bold does not make in this lawsuit.  *Id.*  Defendants further argue that broad topics such as Bold's resume-building website are insufficient to establish a substantial relationship because any lawsuit in which Bold is involved will necessarily involve such topics.  *Id.* at 6–7.  To the extent that their discovery requests regarding Bold's corporate structure and licensing strategy and allegations of unfair competition are relevant, Defendants argue that Bold previously objected to the discovery requests as irrelevant, Bold argues that Defendants accusations are meritless, and Bold should not be allowed to take a contrary position here.  *Id.* at 7–8.  Finally, Defendants argue that Alston & Bird has not retained any confidential work product from the prior representations other than an eight-page memo providing hypothetical tax advice.  *Id.* at 8.

The Court will address each of the three prior representations in turn.  First, the Court finds that Bold has failed to meet its burden to show that the representation resulting in the IP Transfer Memo is substantially related to the current litigation.  Bold relies on the declaration of Sofia Lopez, Bold's Vice President of Legal, which states that Ripley and Tanenbaum authored the IP Transfer Memo and that it "provided Bold with attorney-client privileged recommendations regarding Bold's corporate structure and the transfer and licensing of intellectual property among related Bold entities."  Lopez Decl. ¶ 6.  However, Bold has not produced the IP Transfer Memo

or any other evidence describing the representation.  Charles Cox, a partner at Alston & Bird, characterizes the IP Transfer Memo differently—his declaration states that "Alston & Bird provided tax advice to Bold which produced an 8-page memorandum . . . advising Bold on how to structure intellectual property transfers to a hypothetical U.S. corporation in order to minimize exposure under [Internal Revenue Code] § 956."  Cox Decl. ¶ 4.  The Court presumes that Bold has good reasons for not producing the IP Transfer Memo.  However, without seeing the IP Transfer Memo or any specific evidence describing the nature of the representation, the Court cannot accurately compare the "subject" of the IP Transfer Memo representation with this copyright action, especially in light of the parties' differing characterizations of the scope of the representation.  *See Jessen*, 111 Cal.App.4th at 713.  Accordingly, Bold has failed to meet its burden to show, by a preponderance of evidence, that the IP Transfer Memo representation is substantially related to the current representation.

Second, the Court finds it a close question as to whether Bold has met its burden to show that the representation resulting in the form intercompany IP license agreement is substantially related to the current representation.  Bold represents that "Sullivan drafted ██████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████" Lopez Decl. ¶ 7.  Bold has also provided the Court with the license agreement ██████████████████████.  *See* Lopez Decl. Ex. B.  Bold argues that Sullivan would have been exposed to information about Bold's organizational structure and the transfer and licensing of IP among Bold entities.  Mot at 7.  However, Bold does not provide sufficient evidence or explanation why these issues are "directly at issue in, or have some critical importance to," this case such that they would be material.  *See Victaulic*, 80 Cal.App.5th at 512 (quoting *Wu*, 38 Cal.App.5th at 1083).  Although certainly information about Bold's corporate structure is relevant background information, Bold has not explained why this information is relevant to an element of copyright infringement.  *See WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, No. 19-CV-07123-PJH, 2020 WL 7133773, at *7 (N.D. Cal. June 16, 2020) (finding that the movant in a disqualification motion failed to demonstrate how "relevant background information" from the first representation is directly at issue in or of critical importance to the

second representation).  Similarly, the facts that Defendants have sought discovery on Bold's corporate structure and accused Bold of unfair competition in emails between counsel does not mean that the topic is central to this copyright action.  After all, parties often take broad discovery beyond the key issues or topics.  By the same logic, relevance to allegations made by counsel in a private email does not make a topic material for purposes of disqualification.  Finally, although Bold argues that its licenses are material to the calculation of damages, Reply at 1, █████████

█████████.  *See* Lopez Decl. Ex. B § 4.  Thus, Bold has failed to meet its burden to show that Sullivan would have obtained confidential information relevant to damages when drafting Bold's form intercompany IP license agreement.  *See Khani v. Ford Motor Co.*, 215 Cal.App.4th 916, 921 (2013) (noting that the moving party bears the burden of producing "evidence bearing on the materiality of the information the attorney received during the earlier representation").

Third, the Court concludes that the 2014 copyright enforcement actions are substantially related.  The complaints in *Resume Companion* and *Mint Media* allege that similar resume building websites violated Bold's (then LiveCareer's) copyrights by copying the text, layout, and design of Bold's websites, including the MPR Website.  *See Resume Companion* ECF No. 1 ¶¶ 11, 19–21; *Mint Media* ECF No. 1 ¶¶ 11, 18–20.  These allegations indicate that Bold's copyright registration and enforcement practices, as well as the value that Bold places on its IP portfolio, would have been sufficiently important to the Alston & Bird attorneys' representation in the 2014 copyright enforcement actions such that confidential information about these topics would have been shared with the Alston & Bird attorneys involved.  *See Diva Limousine*, 2019 WL 144589, at *10 (finding that, although there was little overlap in the legal issues raised between the prior and current representation, the representations shared a similar factual predicate such that confidential information about the factual predicate would normally have been shared with counsel in the prior representation).  In this case, Bold alleges that Defendants run a site nearly identical to the MPR Website and that Defendants violated Bold's copyrights by coping Bold's original job descriptions from the MPR Website.  FAC ¶¶ 24, 26–27.  The overlap of factual and legal issues between the prior and current representations indicates that information about Bold's copyright registration and

14

1    enforcement practices and its IP portfolio are material to the evaluation, prosecution, settlement, or

2    accomplishment in this case.

3         Defendants' arguments pertaining to the substantial relationship between the 2014

4    copyright enforcement actions and this case are unavailing.  Defendants first construe this case as

5    limited to Bold's TTC database and the 2014 actions as limited to the "look and feel" of Bold's

6    websites, but such constructions take a narrow view of the representations that is contrary to the

7    weight of authority in cases addressing disqualification based on successive representation.  *See,*

8    *e.g.*, *Diva Limousine*, 2019 WL 144589, at *10 ("Courts have cautioned against 'positing overly

9    restrictive limitations on what is reasonable to assume is communicated between lawyers and their

10   clients,' because 'clients could not be expected to limit themselves to giving their attorneys only

11   the information most relevant or critical to a particular engagement.'" (alteration omitted) (quoting

12   *Openwave Sys., Inc. v. 724 Sols. (US) Inc.*, No. C 09-3511 RS, 2010 WL 1687825, at *5 (N.D.

13   Cal. Apr. 22, 2010))); *see also Jessen*, 111 Cal.App.4th at 712 ("[T]he attorney may acquire

14   confidential information about the client or the client's affairs which may not be directly related to

15   the transaction or lawsuit at hand but which the attorney comes to know in providing the

16   representation to the former client with respect to the previous lawsuit or transaction.").  The 2014

17   copyright enforcement actions concerned, among other things, the text of the MPR Website.  This

18   action also concerns text of the MPR Website—specifically, Bold's original job descriptions as

19   organized in the TTC database.  FAC ¶ 17.  Although Defendants may be correct that this case

20   concerns a different copyright, the subject matter of the prior representations and this

21   representation substantially overlap because they involve the same legal issues (copyright

22   infringement alleged by Bold) and are based on the same Bold product (the text of the MPR

23   Website).  *See Advanced Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp.*, 913 F.Supp.2d

24   900, 908 (C.D. Cal. 2012) (noting that a court ruling on disqualification need not do an in-depth

25   comparison between products and that "a rational link between the subject matter of the two cases

26   will suffice").

27         Defendants also argue that Alston & Bird has not retained any confidential information

28   from the prior representations.  Not only do Defendants fail to provide evidence to support this

United States District Court
Northern District of California

15

1    assertion, but this assertion focuses on the wrong inquiry.  Settled California law states that if the

2    Court finds a direct relationship between the attorney and the former client, it must presume that

3    confidential information was exchanged between the attorney and the former client rather than

4    engage in an "inquiry into the actual state of the lawyer's knowledge."  *See Jessen*, 111

5    Cal.App.4th at 710 (quoting *Ahmanson*, 229 Cal.App.3d at 1453).

6         Finally, Defendants argue that the fact that the 2014 copyright enforcement actions and this

7    case concern Bold's resume-building websites is insufficient to establish a substantial relationship

8    and that this motion should be denied along the lines of *TWiT, LLC v. Twitter Inc.*, No. 18-CV-

9    00341-JSC, 2018 WL 2470942 (N.D. Cal. June 1, 2018).  Opp. at 6–7.  In *TWit*, the district court

10   denied a motion to disqualify counsel, finding that the prior representation was not substantially

11   related to the current representation.  *Id.* at *3–5, *7.  Although both cases involved the former

12   client's audio and video streaming, the Court found that the two representations involved distinct

13   legal issues—the prior representation was a patent suit concerning whether the former client's

14   audio and video streaming infringed a patent while the current representation was a trademark and

15   breach of contract suit in which the former client's audio and visual *technology* was not relevant.

16   *Id.* at *4–5.  Unlike in *TWit*, the 2014 copyright enforcement actions and this action do not simply

17   concern Bold's resume-building websites—they involve the same websites and similar copyright

18   claims.  Thus, confidential information obtained during the 2014 copyright enforcement actions is

19   clearly relevant to this case.

20        Because the Court concludes that the 2014 copyright enforcement actions are substantially

21   related to the current representation, Koppelman, Lorenzo, Mukerjee, and Soderstrom would be

22   disqualified from representing Bold in this action.  *See City & Cnty. of San Francisco v. Cobra

23   Sols., Inc.*, 38 Cal.4th 839, 847 (2006) ("When a substantial relationship between the two

24   representations is established, the attorney is automatically disqualified from representing the

25   second client.").  However, none of these four attorneys is currently representing Defendants, so

26   the Court must determine whether Alston & Bird, and by extension Patterson and Zottola, are

27   disqualified from representing Defendants in this matter.

28

### ii.    Whether Alston & Bird Must Be Vicariously Disqualified

Bold advances two theories for why Alston & Bird should be vicariously disqualified in this case: (1) disqualification based on the conflicts of attorneys currently associated with the firm and (2) disqualification based on the conflicts of attorneys no longer associated with the firm. California Rule of Professional Conduct 1.10 governs the imputation of a tainted attorney's conflict to the attorney's firm.  Rule 1.10 presents two different sets of rules, the application of which depends on whether the tainted attorney is currently associated with the firm or whether the tainted attorney has terminated association with the firm.  *Compare* Cal. R. Prof'l Conduct 1.10(a) (governing imputation of a currently associated attorney's conflict to the firm), *with* Cal. R. Prof'l Conduct 1.10(b) (governing imputation of a terminated attorney's conflict to the firm).  California decisional law is in accord.  California Courts of Appeal have held that, when a tainted attorney continues to be associated with a firm, the presumption of shared knowledge applies, but it can be rebutted by a showing that the firm implemented an effective ethical wall.  *See Kirk*, 183 Cal.App.4th at 801 (holding that the presumption of imputed knowledge "can be refuted by evidence that ethical screening will effectively prevent the sharing of confidences in a particular case"); *see also Nat'l Grange of Ord. of Patrons of Husbandry v. California Guild*, 38 Cal.App.5th 706, 715 (2019) (same).  If, however, the tainted attorney left the firm, then the presumption of shared knowledge is rebutted by a showing that confidential information was not actually exchanged.  *See Kirk*, 183 Cal.App.4th at 815 (noting that when the disqualified attorney leaves the firm, the analysis changes from whether there is a *risk* that confidential information will be shared with other attorneys at the firm to whether the disqualified attorney *actually* conveyed confidential information).

### a.    Rule 1.10(a): Tainted Attorneys Currently Associated with Alston & Bird

Under Rule 1.10(a) and California decisional law, once the party moving for disqualification has established that an attorney is tainted with confidential information, and is thus disqualified, a rebuttable presumption arises that the attorney shared that information with the attorney's law firm.  *See* Cal. R. Prof'l Conduct 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be

1    prohibited from doing so . . . unless . . . ."); *Kirk*, 183 Cal.App.4th at 809–10.  "The burden then

2    shifts to the challenged law firm to establish that the practical effect of formal screening has been

3    achieved."  *Kirk*, 183 Cal.App.4th at 810–11 (identifying the elements of an effective screen).  In

4    this case, Koppelman and Lorenzo continue to be partners at Alston & Bird.  *See* Lopez Decl.

5    ¶ 11.  Therefore, a presumption arises that all attorneys at Alston & Bird have confidential

6    information material to this case.

7            The Court first observes that this case is distinct from the cases cited by the parties in

8    which other courts have found the presumption of shared confidences can be rebutted by effective

9    ethical walls.  Those cases, and the California Rules of Professional Conduct, allow the

10   presumption of shared confidences to be rebutted by ethical walls where the tainted attorney's

11   conflict arises because of a prior representation *while at a prior firm*.  *See* Cal. R. Prof'l Conduct

12   1.10(a)(2) (". . . unless . . . the prohibition is based upon rule 1.9(a) or (b) and arises out of the

13   prohibited lawyer's association with a prior firm, and . . . the prohibited lawyer is timely screened

14   from any participation in the matter and is apportioned no part of the fee therefrom."); *see also*

15   *Kirk*, 183 Cal.App.4th at 814 ("[W]e have concluded that, when a tainted attorney *moves from one*

16   *private law firm to another*, the law gives rise to a rebuttable presumption of imputed knowledge

17   to the law firm, which may be rebutted by evidence of ethical screening." (emphasis added));

18   *Sierra*, 630 F.Supp.3d at 1206 (applying the rebuttable presumption where a tainted attorney's

19   conflict arose during association with a prior law firm); *California Self-Insurers' Sec. Fund v.*

20   *Superior Ct.*, 19 Cal.App.5th 1065, 1077–79 (2018) (similar).  However, the plain text of Rule

21   1.10(a) suggests that ethical screening can rebut the presumption of shared knowledge only where

22   the conflict "arises out of the prohibited lawyer's association with a prior firm."  Cal. R. Prof'l

23   Conduct 1.10(a)(2).  The parties have not pointed the Court to any case law that suggests ethical

24   screening may rebut the presumption in a case like this, where the tainted attorneys continue to be

25   associated with the law firm.  Accordingly, under Rule 1.10(a), Alston & Bird must be vicariously

26   disqualified.

27           Were the Court to consider Alston & Bird's ethical screening in this case, the Court would

28   find that Alston & Bird has failed to meet its burden to show that any ethical screening was

effective.  Alston & Bird did not establish an ethical wall around Patterson until September 12, 2023, around two months after Patterson was retained by Defendants.  Elliott Decl. Ex. G.  Under California law, this ethical wall is not timely.  *See Nat'l Grange of Ord. of Patrons of Husbandry*, 38 Cal.App.5th at 715 ("[A] firm must impose screening measures when the conflict first arises.").  Moreover, the record is devoid of evidence that Zottola was screened at all, although Patterson represented in emails to Bold's counsel that Zottola has not accessed any Bold documents or information regarding this matter.  Elliott Decl. Ex J.  However, Alston & Bird has identified no rules or procedures that will or would have prevented access to confidential information, files, or tainted attorneys.  *See Kirk*, 183 Cal.App.4th at 811 (noting that rules and procedures preventing access to confidential information are relevant elements of an effective ethical wall).  Accordingly, even if Alston & Bird could overcome the presumption of shared confidences, it has failed to do so because it has not implemented effective ethical walls around Patterson or Zottola.

b. Rule 1.10(b)

Under Rule 1.10(a) and California decisional law, once a tainted attorney leaves a law firm, the Court must determine whether confidential information was actually exchanged between the tainted attorney and lawyers that remain at the firm.  *See* Cal. R. Prof'l Conduct 1.10(b)(2) ("When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless . . . any lawyer remaining in the firm has [confidential] information.").  The California Courts of Appeal have clarified that the inquiry is a retrospective one that considers "whether the tainted attorney *actually* conveyed confidential information."  *Kirk*, 183 Cal.App.4th at 815–16 (citing *Goldberg v. Warner/Chappell Music, Inc.*, 125 Cal. App. 4th 752, 762 (2005)); *see also Fluidmaster, Inc. v. Fireman's Fund Ins. Co.*, 25 Cal.App.5th 545, 552 (2018) ("[O]nce a disqualified attorney leaves the target firm, the only real question is whether any confidences were shared with the target firm."); *California Self-Insurers' Sec. Fund v. Superior Ct.*, 19 Cal.App.5th 1065, 1078–79 (2018) (instructing the trial court to determine "whether confidential information was, indeed, transmitted from [the tainted former attorney] to the attorneys working on the matter at [the firm]"); *Goldberg*

19

1    *v. Warner/Chappell Music, Inc.*, 125 Cal.App.4th 752, 762 (2005) (analyzing whether confidential

2    information was actually divulged in a case where the attorney had departed the law firm three

3    years prior to the challenged reputation).  The burden is on the law firm to rebut the presumption

4    of shared confidences.  *See Kirk*, 183 Cal.App.4th at 816.

5        Bold argues that, although tainted attorneys Mukerjee and Soderstrom have left Alston &

6    Bird, Alston & Bird attorneys continue to have confidential information about Bold. Mot. at 8–9.

7    Defendants argue that no attorney holding confidential information about Bold has shared

8    confidential information with Patterson or Zottola.  Opp. at 9; *see also* Cox. Decl. ¶ 9.  At the

9    hearing, Patterson confirmed that "I have not ever spoken to any of the 26 lawyers at the firm

10   about Bold, about our prior representation of Bold."  ECF No. 188 at 34:8–9.  The Court has no

11   reason to doubt the truth of Patterson's and Alston & Bird's representations to this Court.

12   However, self-serving declarations and representations of the firm are not alone sufficient to

13   establish that no confidential information was actually conveyed.  *See MD Helicopters, Inc. v.*

14   *Aerometals, Inc.*, No. 2:16-CV-02249-TLN-AC, 2021 WL 1212718, at *7 (E.D. Cal. Mar. 31,

15   2021); *State Comp. Ins. Fund v. Drobot*, No. SACV 13-956 AG (CWX), 2014 WL 12579808, at

16   *8 (C.D. Cal. July 11, 2014).  Because the record contains no other evidence that would show that

17   confidential information was not actually exchanged, Alston & Bird has not met its burden to

18   rebut the presumption of shared confidences and it must be vicariously disqualified under Rule

19   1.10(b).

20       In determining that Alston & Bird must be vicariously disqualified under either subsection

21   of Rule 1.10, the Court emphasizes what this case is not.  This is not a case where a tainted

22   attorney brings prior conflicts to a new firm.  This is not a case where all of the tainted attorneys

23   have left the firm.  This is not a case where a timely and effective ethical wall was erected.  This is

24   a case where current and former attorneys at a law firm had a direct relationship with a former

25   client in prior representations and the law firm, albeit through different attorneys, now seeks to be

26   adverse to the former client in a substantially related representation.  Under these circumstances,

27   the Court must find that Alston & Bird is vicariously disqualified.

28

###### iii.     Whether the Equities May Excuse Disqualification

Although neither party has presented arguments regarding equitable considerations, the Court considers the equities in determining whether it is appropriate to order disqualification.  *See Klein*, 2021 WL 3053150, at *4, *8; *Diva Limousine*, 2019 WL 144589, at *3.  As noted above, the equitable considerations that the Court may consider in deciding whether disqualification is appropriate include:  "[A] client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion."  *SpeeDee Oil*, 20 Cal.4th at 1145.

The Court finds that the equities weigh in favor of disqualification.  Although Defendants are entitled to their chosen counsel and the Court acknowledges Alston & Bird's interest in representing Defendants, the Court finds that the other two equitable considerations outweigh these interests.  *See SpeeDee Oil*, 20 Cal.4th at 1145 ("The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process.").  Defendants will not face substantial prejudice if the Court disqualifies Alston & Bird.  Patterson was retained as an "in-house lawyer" or "general counsel" to Rocket Resume.  Elliott Decl. Exs. B, E.  Moreover, Gibson Dunn would remain as lead counsel, so Defendants will not face the financial burden or delay of replacing disqualified counsel.  *See Klein*, 2021 WL 3053150, at *8 (finding disqualification appropriate where the disqualified firm was one of four representing the affected party).  The Court also does not find that Bold engaged in tactical abuse because, as discussed above, Bold did not delay in seeking disqualification once it became aware of the conflict.  *See W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F.Supp.3d 1074, 1092 (C.D. Cal. 2015) (finding no tactical abuse where the motions were filed days after the movant learned of the conflict and met and conferred with opposing counsel).

//

//

//

//

//

**IV.    ORDER**

    For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff Bold Limited's motion to disqualify Alston & Bird LLP (ECF No. 129) is GRANTED.  The Court DISQUALIFIES Alston & Bird from representing Defendants Rocket Resume, Inc. and Stephen Zimmerman in this action.


Dated:  February 7, 2024

                                                    _____
                                                    BETH LABSON FREEMAN
                                                    United States District Judge