UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BOLD LIMITED, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>ROCKET RESUME, INC., et al.,<br><br>        Defendants. | Case No. 22-cv-01045-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF No. 214] |

Before the Court is Defendants Rocket Resume, Inc. and Stephen Zimmerman's motion for partial summary judgment. ECF No. 214 ("Mot."). Plaintiff Bold Limited ("Bold") opposes the motion. ECF No. 235 ("Opp."). Defendants filed a reply in support of the motion. ECF No. 259 ("Reply"). The Court held a hearing on the motion on May 2, 2024. ECF No. 272.

For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.

I.     **BACKGROUND**

    **A.**     **Bold's Text Tuner Content and Copyrights**

Bold owns and operates a website called "MyPerfectResume" ("MPR Website"), which is available at www.myperfectresume.com. ECF No. 51 ("FAC") ¶¶ 1, 11–12. Through the MPR Website and its other sites, Bold provides resume-building services in which a user selects a job title and is presented with a filtered list of suggested textual resume content. *Id.* ¶¶ 15–16. Bold refers to this resume content, individually and collectively, as its "Text Tuner Content" ("TTC"). ECF No. 236-2 ("Lovejoy Decl. Ex. B") at 6.

Bold's TTC database organizes its content in a number of ways and using a number of criteria. For example, Bold organizes the TTC into ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which

corresponds to a particular section of a user's resume for which the content is intended. *See* ECF No. 263-4 ("Lovejoy Decl. Ex. D") at 32:18–20, 33:1–22; ECF No. 236-6 ("Lovejoy Decl. Ex. F") at 98:23–99:19. The database uses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 33:18–34:18. A second way that Bold organizes the TTC is by ▮▮▮▮▮▮▮▮ which refers to the language and geographic audience for which the content is intended, such as ▮▮▮▮ for English TTC for a United States audience. *See* Lovejoy Decl. Ex. F at 176:15–177:10. A third way that Bold organizes the TTC is by ▮▮▮▮▮▮▮▮▮▮ which indicates the Bold websites on which the content is available. *See, e.g.*, ECF No. 236-7 ("Lovejoy Decl. Ex. G") (deposit copy of Bold's 2020 TTC, on file with the Court); ECF No. 236-8 ("Lovejoy Decl. Ex. H") (deposit copy of Bold's 2018 TTC, on file with the Court); ECF No. 236-9 ("Lovejoy Decl. Ex. I") (deposit copy of Bold's 2019 TTC, on file with the Court). For example, ▮▮▮▮▮▮▮▮▮▮ designates content that is available on the MPR Website. Lovejoy Decl. Ex. F at 176:2–8.

On October 19, 2020, Bold registered the 2018, 2019, and 2020 versions of its TTC with the U.S. Copyright Office. Lovejoy Decl. Ex. B at 7; ECF No. 214-3 ("Myrold Decl. Ex. B") (copies of the original copyright registrations for the 2018, 2019, and 2020 versions of Bold's TTC). The original copyright registration certificates state that the 2018 version of the TTC was first published on December 31, 2018 and was registered under number 8-919-525, the 2019 version was first published on December 31, 2019 and was registered under number 8-919-529, and the 2020 version was first published on August 18, 2020 and was registered under number 8-919-521. Myrold Decl. Ex. B at 3, 8, 13. All three of the copyright registrations have an effective date of October 19, 2020. *Id.* The original copyright registration certificates specify that Bold Limited is the author of the copyrighted works and that copyright protection extended to the "text." *Id.*

Near the end of 2023, Bold applied to the U.S. Copyright Office for supplementary registrations for the 2018, 2019, and 2020 versions of Bold's TTC.[1] *See* ECF No. 214-7 ("Myrold

---

[1] The parties dispute whether the omission of information from Bold's original copyright application was intentional or inadvertent. *See* Mot. at 3 n.2 (suggesting that the omission was

Decl. Ex. F") (email correspondence between the U.S. Copyright Office and counsel for Bold regarding supplementary registrations). On January 24, 2024, the U.S. Copyright Office issued supplementary registrations for the 2018, 2019, and 2020 versions of the TTC. ECF No. 214-8 ("Myrold Decl. Ex. G") (the supplementary registration certificates). The supplementary registration certificates, which all have an effective date of October 4, 2023, now state that copyright protection extends to the "text and compilation of occupational descriptions and task statements." *Id.* at 3, 6, 9. The supplementary registration certificates also state that "preexisting text" is material excluded from the copyright claim and "some original text; selection and coordination of occupational descriptions and task statements" is "new material included in claim." *Id.* Under "Explanation of Corrections," the supplementary registration certificates state that "the authorship statement and limitation statements need correction to better reflect the work at the time of original registration." *Id.* at 4, 7, 10.

### B. The Alleged Copyright Infringement

Defendants Rocket Resume, Inc. and Stephen Zimmerman operate a website called Rocket Resume, ("Rocket Resume Website"), which is available at www.rocket-resume.com. FAC ¶ 24. The Rocket Resume Website allows users to generate resumes using suggested resume content stored in Rocket Resume's database. ECF No. 236-10 ("Lovejoy Decl. Ex. J") at 233:8–10; 241:3–10. Rocket Resume began offering suggested resume content in April 2019. *Id.*; ECF No. 214-2 ("Myrold Decl. Ex. A") at 12–13 (Knox expert report stating that suggested resume content was added to Rocket Resume in April 2019 and the content was made available to users in late 2019).

Around May 2021, Bold discovered that certain content on the Rocket Resume Website was identical to content in Bold's TTC, including "digital watermarks" (that is, nonsensical narratives and job titles designed to help Bold detect copying). *See* ECF No. 236-12 ("Lovejoy Decl. Ex. L") (a letter from Bold to Defendant Zimmerman identifying the similarities); Lovejoy Decl. Ex. B at 12. As a result, Bold brought this lawsuit, and alleges that portions of Rocket Resume's individual text entries infringe Bold's copyrights to the original text of the TCC and that

---

intentional), *with* Opp. at 3 (characterizing the omission as "inadvertent errors"). The Court need not reach this issue to rule on the motion for summary judgment.

1    Rocket Resume content "collectively infringes Bold's copyrights to Bold's original selection and
2    compilation of TTC entries." ECF No. 214-4 ("Myrold Decl. Ex. C") at 7.

### C. Procedural History

On February 18, 2022, Bold Limited filed the initial complaint in this case. ECF No. 1 ("Compl."). The Court then granted Bold Limited's unopposed motion for leave to file an amended complaint and join Bold LLC as a co-plaintiff. ECF No. 50. The FAC brought three causes of action: (1) copyright infringement in violation of 17 U.S.C. § 101 *et seq.*; (2) unfair competition in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and (3) breach of contract. FAC ¶¶ 33–58. Bold Limited brought the copyright claim and a UCL claim, while Bold LLC brought the breach of contract claim and a UCL claim. *See id.* Defendants then filed a motion to dismiss and a motion to compel arbitration. *See* ECF No. 60 ("MTD"); ECF No. 64 ("MTC"). On June 22, 2023, the Court denied Defendants' motion to dismiss Bold LLC's UCL and breach of contract claims but compelled the claims to arbitration. ECF No. 77 at 16–17. On Bold Limited's claims, the Court denied Defendants' motion to dismiss the copyright claim and granted with leave to amend the motion to dismiss Bold Limited's UCL claim. *Id.* at 17. The Court further stayed the UCL claim pending arbitration of Bold LLC's state law claims. *Id.* at 12–13, 17. Thus, only Bold Limited's copyright claim remains active.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the evidence and all reasonable inferences in the light most favorable to the nonmoving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F.Supp.2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, the Court "does not assess

1  credibility or weigh the evidence, but simply determines whether there is a genuine factual issue
2  for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).  A fact is "material" if it "might affect the
3  outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if
4  there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.
5  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

      Where the moving party does not have the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (internal quotation marks omitted).  If the nonmoving party's "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).  Mere conclusory, speculative testimony in affidavits and moving papers is also insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

**III.  DISCUSSION**

      Defendants move for summary judgment on three bases: (1) Bold's claim that Defendants infringed its compilation copyrights; (2) Bold's request for statutory damages and attorneys' fees; and (3) Bold's fair market value license theory. *See generally* Mot.  The Court will address each in turn.

      **A.  Infringement of Compilation Copyright**

      The Copyright Act recognizes that collections or compilations may possess the requisite originality for copyright protection. *See* 17 U.S.C. § 103; *see also Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) ("These choices as to selection and arrangement, so long

as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws."). A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Copyright infringement requires a plaintiff to show that (1) it owns a valid copyright and (2) the defendant copied aspects of the copyrighted work. *Corbello v. Valli*, 974 F.3d 965, 973 (9th Cir. 2020). "The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'" *Id.* at 973–74 (*quoting Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc)). "Copying can be demonstrated either through direct evidence or by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying, while the hallmark of unlawful appropriation is that the works share substantial similarities." *Id.* at 974 (internal quotation marks omitted) (quoting *Skidmore*, 952 F.3d at 1064).

    Defendants do not contest the validity of Bold's copyrights, but instead argue that Bold cannot establish that Defendants copied the compilation of the copyrighted works for two reasons. First, Defendants argue that Bold cannot show copying for the compilation claim because Bold has submitted evidence that Rocket Resume copied the text of Bold's TTC, but no evidence that Rocket Resume copied the selection and arrangement of the TTC database. Mot. at 7–8. Even if the Court considered Bold's evidence as relevant to copying of the selection and arrangement of the TTC database, Defendants argue that Bold cannot prove unlawful appropriation because Rocket Resume's database and the TTC database are not "virtually identical." *Id.* at 8–9 (citing *Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*, 893 F.3d 1176, 1185–86 (9th Cir. 2018)). Bold responds that a dispute of material fact exists because a jury will be able to compare Bold's registered TTC deposits and Rocket Resume's database to determine whether Defendants copied Bold's copyrighted works and whether the results are substantially similar. Opp. at 10. Bold also points to its expert, Dr. Patrick Juola, who will testify to the analysis he performed, explain his opinions, and identify to the jury materials to assist them. *Id.* Bold also argues

6

*Experian* is distinguishable because its 80% requirement is dicta, and that case is limited to factual compilations. *Id.* at 13–14.

The Court agrees with Defendants that Bold has failed to meet its burden to identify portions of the record that Bold believes demonstrate the absence of any genuine issue of material fact. Bold has failed to produce either direct evidence of copying or evidence showing that Bold's TTC database and Rocket Resume's database share similarities in their selection, coordination, or arrangement that would be probative of copying. Most notably, Bold's infringement expert, Dr. Juola, does not opine on the selection, coordination, or arrangement of the two databases. *See* ECF No. 237-1 ("Juola Decl. Ex. 1" or "Juola Opening Report"). In fact, Dr. Juola was not asked to do so. Instead, his assignment was to determine the degree to which similar or identical elements are present in the two databases and categorize individual elements by their degree of similarity. *Id.* ¶¶ 10–11. Whether and the degree to which the two databases share similar text entries is not sufficiently probative of their selection, coordination, or arrangement for a reasonable trier of fact to find for Bold.

Bold argues that the jury can compare Bold's registered TTC deposits and Rocket Resume's database to determine whether Defendants copied the selection and coordination of the TTC and to determine whether the results are substantially similar. *See* Opp. at 10–12. It is illuminating to describe what Bold is asking of the jury. Bold is asking the jury to compare over 12,000 pages of its TTC database with over 25,000 pages of Rocket Resume's database to determine whether the two databases share similarities in their selection, coordination, or arrangement that would be probative of copying and whether the selection, coordination, or arrangement of the databases are substantially similar. *See* Lovejoy Decl. Ex. G (the deposit copy of the 2020 version of the TTC, which is a 3410-page PDF file that contains over 50 rows of spreadsheet data per page); Lovejoy Decl. Ex. H (the deposit copy of the 2018 version of the TTC, which is a 5561-page PDF file that contains over 50 rows of spreadsheet data per page); Lovejoy Decl. Ex. I (the deposit copy of the 2019 version of the TTC, which is a 3483-page PDF file that contains over 50 rows of spreadsheet data per page); ECF No. 246-14 ("Lovejoy Decl. Ex. N") (Rocket Resume's database, produced as 14 documents in JSON format that when viewed as raw

7

text total over 25,000 pages). This evidence is so voluminous that Bold's expert noted that human review of the databases is impractical and used a computer to conduct his analysis. ECF No. 237 ("Juola Decl.") ¶ 14 ("Because of the size and structure of Bold's and Rocket Resume's respective databases, it may be difficult for human readers to look at every element in the various databases and to judge the similarity unaided. My team and I thus used computers to do an automated similarity comparison . . . ."); *see also* ECF No. 237-1 ("Juola Decl. Ex. 1" or "Juola Opening Report") ¶ 11 ("Because of the size and structure of these databases (over 300,000 individual phrase elements in the Bold database alone, and over 200,000 in a single RR database snapshot), it is impractical for human readers to look at every element in various databases and to judge similarity."). Bold argues that Dr. Juola's testimony will aid the jury as it embarks on this titanic endeavor. *See* Opp. at 12. However, as the Court noted above, Dr. Juola did not opine on the selection, coordination, or arrangement of the two databases and Bold presents no other evidence, expert or otherwise, that would either be probative of Bold's compilation theory or that would distill the databases for the jury. Instead, what Bold has done in responding to the motion for summary judgment and what it apparently intends to do at trial is the equivalent of dumping a semi-truck full of hay into the courtroom and asking the trier of fact to find a needle. This is not adequate to raise a genuine issue of fact. *See Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74 F. Supp. 3d 1134, 1139 (N.D. Cal. 2014) ("It is not the task of the district court to scour the record in search of a genuine issue of triable fact."); *see also Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1133 (Fed. Cir. 2021) (affirming summary judgment of non-infringement in a patent case where a patent owner "cited swaths of documents" but "failed . . . to explain how those documents support its infringement theory").

Accordingly, the Court GRANTS summary judgment to Defendants on Bold's compilation infringement theory.[2]

---

[2] Because the Court finds that Bold has failed to meet its burden to identify specific facts that create a genuine issue for trial, the Court need not reach the parties' arguments regarding the extent to which *Experian*'s unlawful appropriation analysis applies to this case.

### B.  Statutory Damages and Attorneys' Fees

Defendants argue that Bold is not entitled to statutory damages or attorneys' fees because the alleged infringement began in April 2019, well before Bold filed its registrations for the 2018, 2019, and 2020 versions of the TTC.  Mot. at 9–11.  Bold responds that the 2020 version of the TTC was registered within three months after its first publication and is thus eligible for statutory damages and attorneys' fees.  Opp. at 17–18.

The Copyright Act permits a copyright owner to elect to recover either actual damages and profits or statutory damages.  17 U.S.C. § 504.  The Copyright Act also allows the Court to award attorneys' fees to the prevailing party.  17 U.S.C. § 505.  However, statutory damages and attorneys' fees are limited by § 412, which states:

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for--
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.  This section "leaves no room for discretion." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008).  "The statute contemplates the interaction of three distinct events, the date of registration, the date of first publication, and the date infringement commences." *Zito v. Steeplechase Films, Inc.*, 267 F.Supp.2d 1022, 1026 (N.D. Cal. 2003).  Under § 412(1), "if a work is unpublished and unregistered at the time of infringement, no statutory damages or attorney's fees are available." *Id.*  Under § 412(2), "in order to recover statutory damages, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication of the work." *Derek Andrew*, 528 F.3d at 699.  For purposes of § 412, the Ninth Circuit has held that

9

"*the first act of infringement* in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412." *Id.* at 701.

The Court finds that Bold cannot recover statutory damages or attorneys' fees for infringement of its copyrights to the 2018 and 2019 versions of the TTC. Bold's opposition brief presents no argument for why it could be entitled to statutory damages or attorneys' fees for these versions of the TTC. In the Court's view, Bold has abandoned its claims to statutory damages for the 2018 and 2019 versions of the TTC. Moreover, the Court finds that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law. The 2018 version of the TTC was first published on December 31, 2018, and its effective date of registration is October 19, 2020. Myrold Decl. Ex. B at 8. The 2019 version of the TTC was first published on December 31, 2019, and its effective date of registration is October 19, 2020. *Id.* at 13. Defendants' first act of infringement occurred in April 2019. *See* Myrold Decl. Ex. A ¶ 54 (identifying April 2019 as the date of first infringement); Lovejoy Decl. Ex. J at 233:8–10; 241: 3–10 (Zimmerman's deposition testimony, in which he stated that Rocket Resume began offering suggested resume content in April 2019). As discussed in more detail below, Bold has failed to point the Court to any facts that would distinguish when the infringement of each copyrighted work commenced. The only evidence before the Court states that the first act of infringement for all three copyrights began in April 2019. Thus, it is undisputed that infringement of the 2018 and 2019 versions of the TTC commenced in April 2019, well before the effective date of either copyright registration, and § 412(1) bars an award for statutory damages or attorneys' fees for infringement of the 2018 and 2019 versions of the TTC.

On the 2020 version of the TTC, the Court finds that Bold has again failed to meet its burden to identify for the Court portions of the record that Bold believes demonstrate a disputed issue of material fact with respect to the date of first infringement. Defendants have met their initial burden and pointed the Court to evidence that infringement commenced in April 2019, the 2020 version of the TTC was first published on August 18, 2020, and its effective date of registration is October 19, 2020. Myrold Decl. Ex. A ¶ 54; Myrold Decl. Ex. B at 3. Bold does not contest this evidence. Instead, Bold argues that statutory damages and attorneys' fees are not

barred by § 412(2) because the registration of the 2020 version of the TTC was made within three months after first publication of the work. Opp. at 17–18. Although Bold's characterization of the facts is undisputed, § 412 clearly "contemplates the interaction of *three* distinct events," and Bold's argument neglects the third relevant event: commencement of infringement. *See Zito*, 267 F.Supp.2d at 1026 (emphasis added). Bold has failed to point the Court to any evidence that the date on which infringement of the 2020 version of the TTC commenced is anything but April 2019. Indeed, the only evidence before the Court states that the date of first infringement, without distinguishing between the three copyrights at issue, is April 2019. *See* Myrold Decl. Ex. A ¶ 54; Lovejoy Decl. Ex. J at 233:8–10; 241: 3–10.

Bold's failure to identify specific facts is significant because binding Ninth Circuit precedent states that when a series of acts of continuing infringement occurs, infringement of a copyrighted work "commences" for purposes of § 412 on the date of the first act. *See Derek Andrew*, 528 F.3d at 700–01. The only evidence before the Court characterizes Defendants' actions as a continuing series of infringement of all three copyrights without distinction between the copyrights or the acts constituting infringement. It may be that the 2020 version of the TTC contains new elements for which infringement commenced on a date after April 2019, but Bold has failed to identify facts that would support this assertion. The Court finds *Big Run Studios v. AviaGames* instructive. In *Big Run Studios*, Judge Davila addressed whether statutory damages and attorneys' fees could be awarded for three copyrights that were subsequent versions of earlier works. *See Big Run Studios, Inc., v. AviaGames, Inc.*, No. 5:21-CV-04656-EJD, 2022 WL 126117, at *5 (N.D. Cal. Jan. 13, 2022). The alleged initial acts of infringement occurred in July 2019 and September 2020, and the three copyrights at issue, although registered within three months after first publication, were registered in 2021. *Id.* at *3. The plaintiffs argued that § 412 did not bar their claims for statutory damages and attorneys' fees because the three copyrights contained new elements, and thus gave rise to separate instances of infringement. *Id.* at *3–5. However, the plaintiffs failed to distinguish between the various copyrights or the defendant's acts of infringement. *Id.* at *4. Thus, Judge Davila granted a motion to dismiss, finding that "the Court cannot find legally significant differences between Defendant's infringements and must

11

1  conclude that the alleged infringements are a series of continued infringements." *Id.*

2  Similar to the plaintiffs in *Big Run Studios*, Bold argues that the 2020 version of the TTC
3  was registered within three months of first publication and thus that § 412(2)'s exception applies.
4  Opp. at 18.  Section 412(2) bars statutory damages and attorneys' fees where infringement
5  commences *between* the date on which a work is published and when a registration is made.  *See*
6  17 U.S.C. § 412(2).  However, § 412(2) carves out an exception, and thus does not bar statutory
7  damages and attorneys' fees, when registration is made within three months after publication.  *Id.*
8  The implication of Bold's argument is that infringement of the 2020 version of the TTC began at
9  some point between August 18, 2020 and October 19, 2020.  This could be true, but Bold has
10 utterly failed to present the Court with any facts from which a trier of fact could find in Bold's
11 favor on the date of infringement.  Instead, the only evidence before the Court shows that the 2020
12 version of the TTC is a subsequent version of the 2018 and 2019 versions and that a continuous
13 series of infringements of Bold's copyrights to the TTC, without regard to which one, began in
14 April 2019.  From this record, the only inference the Court can draw is that infringement of the
15 2020 version of the TTC "commenced" for purposes of § 412 on April 2019, which is before both
16 the date of publication and the date of registration of the 2020 version of the TTC.  Therefore,
17 § 412(1) bars an award for statutory damages or attorneys' fees for infringement of the 2020
18 version of the TTC.

19 Accordingly, the Court GRANTS summary judgment to Defendants on Bold's requests for
20 statutory damages and attorneys' fees.

21 **C.  Fair Market Value License Theory**

22 Defendants argue that, because Bold failed to disclose its fair market value license theory
23 during fact discovery and its theory relies on revenue flowing from websites that Bold stated were
24 not at issue in this litigation, Bold's fair market value license theory should be excluded.  Mot. at
25 11.  Defendants have filed a separate motion under Fed. R. Civ. P. 37 raising this issue (ECF No.
26 213), but Defendants argue that the Court may also decide this issue under Fed. R. Civ. P. 56.  *Id.*
27 at 11–12.  Bold responds that Defendants' request for relief is better heard in their Rule 37 motion,
28 rather than a Rule 56 motion.  Opp. at 19–20.

The Court agrees with Bold and finds that Defendants' request is premature. Defendants argue that Bold's fair market value license theory should be excluded because Bold failed to comply with its obligations under Rule 26. *See* Mot. at 11–12. The proper channel for such a request is a Rule 37 motion or a motion *in limine*, rather than a motion for summary judgment. *See Hernandez ex rel. Telles-Hernandez v. Sutter Med. Ctr. of Santa Rosa*, No. C 06-03350 SBA, 2008 WL 2156987, at *13 (N.D. Cal. May 20, 2008) (rejecting a party's request to "repackage a Rule 37 motion for sanctions, or a motion in limine, as a Rule 56 motion for partial summary judgment); *see also Plante v. United States*, No. 13CV0310-GPC-KSC, 2015 WL 5793712, at *8 (S.D. Cal. Oct. 1, 2015) (observing that a party "may not repackage a Rule 37 motion for sanctions, or a motion in limine, as a Rule 56 motion for partial summary judgment"). Apparently acknowledging this, Defendants have filed a Rule 37 motion, which is fully briefed and will be heard in a few months. *See* ECF No. 213. The Court finds that whether Bold complied with its obligations under Rule 26 is more appropriately heard and better presented in the pending Rule 37 motion. To the extent that Defendants argue that they are entitled to summary judgment on Bold's fair market value license theory because Bold's damages theory should be excluded, *see* Reply at 12–13, Defendants have put the cart before the horse. The Court has not yet ruled on whether Bold's fair market value license theory should be excluded under Rule 37.

Accordingly, the Court DENIES Defendants' motion for summary judgment on Bold's fair market value theory without prejudice to considering Defendants' arguments in their Rule 37 motion.

//
//
//
//
//
//
//
//

IV. **ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants Rocket Resume, Inc. and Stephen Zimmerman's motion for partial summary judgment (ECF No. 214) is GRANTED IN PART and DENIED IN PART.

   a. The Court GRANTS summary judgment to Defendants on Bold's compilation infringement claim and on Bold's request for statutory damages and attorneys' fees.

   b. The Court DENIES WITHOUT PREJUDICE the motion with respect to Bold's fair market value license theory.

Dated: May 24, 2024

_____
BETH LABSON FREEMAN
United States District Judge